Filed 8/17/23  P. v. Glass CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

|  |  |
|---|---|
| THE PEOPLE, | C096404 |
| Plaintiff and Respondent, | (Super. Ct. No. P20CRF0654) |
| v. | |
| ROBERT MICHAEL GLASS, | |
| Defendant and Appellant. | |

Defendant Robert Michael Glass fled during an arrest, and a jury found him guilty of forcefully resisting an executive officer (Pen. Code, § 69; all further section references are to the Penal Code).  But the trial court did not instruct on the lesser included offense of resisting without force (§ 148, subd. (a)(1)), and there was substantial evidence of a lack of force.  On appeal, defendant argues the trial court committed prejudicial error by not instructing the jury on the lesser.  We agree and reverse.

1

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with one count of violating section 69, alleging he both deterred and resisted an executive officer using force and violence. It was further alleged defendant had a prior strike.

A. *Trial Evidence*

Officer Mark Utterback testified that on the morning of December 21, 2020, he drove to an RV parked on the side of a rural highway. Defendant had an outstanding arrest warrant, and Utterback had reason to believe that defendant was in the RV. Utterback parked behind the RV and called for defendant to come out. After some time, defendant came out of the rear window of the RV directly in front of Utterback's parked patrol car.

The prosecutor played a video from Utterback's patrol car showing what happened next. Utterback told defendant he was going to jail because he had warrants, turned defendant around to face the RV, started to arrest defendant, and defendant ran away. Utterback chased defendant, who ran into the highway and then back to the front of the RV while Utterback threatened to use his Taser. Utterback then shot his Taser just as they both ran in front of the RV and out of view of the patrol car's camera.

Sounds of a struggle are heard from the video's audio, coming from a microphone on Utterback, and defendant says "okay" and "why" repeatedly while Utterback says "behind your back" several times, then "behind your back or I'm going to start fucking you up and you'll get tased again." Utterback then says, "I got one combative," and defendant responds, "No, I'm not combative. I'm giving up. I'm not combative." Utterback says, "calm the fuck down," and then sounds of another struggle are heard while defendant yells, "why." then says different forms of "I can't breathe," "please let me breathe," "I'm not combative," and "I'm not trying to fight you," while Utterback says multiple times, "calm down" and "just relax." Both voices then become inaudible but their conversation continues for about six minutes until another officer arrives. The

2

two officers then emerge into the view of the camera from behind the RV with defendant handcuffed between them.

Utterback testified he successfully shot defendant with his Taser, and defendant fell to the ground behind the RV. Utterback put his knees on defendant's back and shoulder area, started to arrest him, but realized he did not have his handcuffs because he dropped them when defendant ran away. Defendant then tried to pull the Taser prongs out of his back and tried to push himself up. This is when Utterback said, "I'm going to start fucking you up," explaining he was trying to use a harsher tone to stop defendant from struggling. Utterback then called dispatch to say he had "one combative." Though defendant responded that he was not combative, Utterback said defendant was trying to get up the entire time. To try and stop defendant, Utterback grabbed defendant's head "six to ten inches off the ground and forcibly shoved it onto the ground," which was a "concrete asphalt mix."

Utterback testified defendant continued trying to get up and successfully stood up, rolling Utterback forward into a summersault off defendant. Utterback had a grip of defendant's shirt collar so he couldn't run away again, defendant tried to push Utterback to the ground, but Utterback was able to grab defendant's leg and bring him back to the ground. Defendant tried to get up again, but Utterback hit him in the face with a closed fist, knocking him back to the ground so that Utterback could again get on defendant's back. Defendant was then subdued until the other officer arrived.

Utterback explained, "[o]ftentimes people say they aren't resisting while they are resisting, and that was the case here," and defendant was able to breathe but people sometimes claim they cannot breathe to try and get away. Utterback also said defendant told him he ran because he panicked, "and when I was on top of him and put his face into the ground, and he couldn't breathe, and that made him panic further."

3

Pictures of defendant after the arrest showed several cuts on his face and a significant amount of blood on his right cheek and nose.  Pictures of Utterback showed bloody scratches on his knuckles and knees.

B.      *Jury Instructions, Verdict, and Sentencing*

The court instructed with CALCRIM No. 2652 for resisting an executive officer that included the element, "defendant unlawfully used force or violence to resist an executive officer."  The court also instructed with CALCRIM No. 2670 that a person may use "reasonable force to defend" themselves against an officer's excessive force.

The jury found defendant guilty of resisting an executive officer under section 69.  The trial court sentenced defendant to the middle term of two years doubled to four for the strike.

### DISCUSSION

The People correctly concede section 148, subdivision (a)(1), is a lesser included offense of section 69 here.  Section 69 can be violated by either deterring or resisting an executive office with force or violence.  (*People v. Smith* (2013) 57 Cal.4th 232, 240.)  Where, as here, the accusatory pleading alleges a violation of section 69 through forceful resistance, willfully resisting a public officer under section 148, subdivision (a)(1) is a lesser included offense.  (*Smith*, at p. 243.)

But a trial court has a duty to instruct the jury sua sponte on a lesser included offense only if it is supported by substantial evidence.  (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 162; *People v. Steskal* (2021) 11 Cal.5th 332, 345.)  "Substantial evidence is evidence that is ' "of ponderable legal significance," ' ' "reasonable in nature, credible, and of solid value," ' and ' " 'substantial' proof of the essentials which the law requires in a particular case." ' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005-1006.)

We must therefore resolve whether there was substantial evidence defendant did not use force to resist Utterback.  In making this determination, we view the evidence in

4

the light most favorable to defendant.  (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

We conclude there was substantial evidence defendant committed the lesser offense and not the greater.  The video does not show defendant using force or violence before he ran out of view.  Though running away was resisting, and enough to violate section 148, subdivision (a)(1), (*People v. Christopher* (2006) 137 Cal.App.4th 418, 431 [" 'Section 148 is most often applied to the physical acts of a defendant.  [Citation.]  For example . . . running away from a police officer' "]), the People do not contend defendant used force to run away that could justify a section 69 violation by itself.

After running out of view of Utterback's patrol vehicle, defendant is heard saying several times he is not combative, he is not fighting, and he is giving up.  This is substantial evidence defendant continued to not forcefully resist after Utterback shot him with his Taser.  And the credibility of these statements is bolstered because the statements were made while the arrest was happening.  (*People v. Garcia* (1986) 178 Cal.App.3d 814, 820 ["In general, the closer in time the declaration is to the event to which it refers the less likely it is to be the product of reflection and fabrication"].)

There is also evidence any force defendant used was reasonable in response to Utterback's excessive force.  Excessive force is a defense to violations of both sections 69 and 148 because " '[t]he lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer.  [Citation.]' " (*People v. Williams* (2018) 26 Cal.App.5th 71, 82.)  Officers are entitled to use "objectively reasonable force" in making an arrest, including in response to forceful resistance. (§ 835a, subd. (b).)  Conversely, under the Fourth Amendment of the United States Constitution, force is excessive if the amount of force used by officers when making an arrest "was objectively unreasonable given the circumstances they faced."  (*Allgoewer v. City of Tracy* (2012) 207 Cal.App.4th 755, 763.)

5

Utterback admitted that he sat on top of defendant, slammed his head into the ground, and punched him in the face. Utterback also said, "I'm going to start fucking you up," and the pictures showed defendant with a bloody face. The jury could have reasonably believed Utterback's force was excessive and that defendant's struggling was reasonable to protect himself from this excessive force. This is supported by Utterback's own testimony that defendant told him he resisted because he panicked after Utterback slammed his head into the ground and because he couldn't breathe. Though Utterback said his use of force was in response to defendant's attempts to resist, and arrestees often lie about their actions, jurors are not required to either believe or disbelieve a witness entirely. (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.) Thus, though any excessive force would not justify defendant's initial flight, it could be justification for any force he used after the flight, resulting in a violation of section 148 and not section 69.

In sum, considering the evidence in favor of defendant as we must, there is substantial evidence defendant either did not use any force, or if he did, it was reasonable force in response to Utterback's unlawful force. It was therefore error to not instruct on the lesser included offense.

We must now consider whether this error was prejudicial. Error in failing to instruct on a lesser included offense does not warrant reversal unless an examination of the entire cause, including the evidence, discloses that "it appears 'reasonably probable' the defendant would have achieved a more favorable result had the error not occurred." (*People v. Breverman, supra*, 19 Cal.4th at p. 149.) "A reasonable probability in this context does not mean more likely than not; it means a reasonable chance and not merely a theoretical or abstract possibility." (*People v. Woods* (2015) 241 Cal.App.4th 461, 474.)

The evidence supporting the greater offense was not overwhelming. The precise line between section 69 and section 148 is not readily apparent. On one end of the spectrum is violently punching or hitting an officer, which is clearly force sufficient for a

6

section 69 violation. (See *People v. Smith, supra*, 57 Cal.4th at p. 245.) On the other end of the spectrum are minor physical acts justifying a section 148 violation, such as refusing orders to sit down. (See *People v. Williams, supra,* 26 Cal.App.5th at p. 92.) Somewhere in the middle is physically struggling. There are cases finding physical struggling with an officer in certain circumstances enough for a section 69 violation. (See *People v. Carrasco* (2008) 163 Cal.App.4th 978, 985-986.) But there are cases finding a section 148 violation appropriate with some physical resistance, such as struggling to pull away from an officer who has grabbed the person's arm. (See *In re Gregory S.* (1980) 112 Cal.App.3d 764, 771, 778.)

We need not decide exactly where a section 148 violation ends and a section 69 violation begins because there is evidence in this case straddling both sides. There is substantial evidence supporting the greater offense, contrary to defendant's arguments, because Utterback testified to several instances of defendant's force. This included at least when defendant pushed him off his back, so he summersaulted, and then when Utterback attempted to stand up defendant pushed him back. The pictures of Utterback with scratches to his knuckles and knees could support this version of the struggle. Utterback also testified he used only as much force as necessary to effectuate the arrest and that arrestees often make false statements to try and get away.

But we cannot find this evidence overwhelmingly supports a section 69 conviction, given that we must consider the evidence in the light most favorable to defendant. The other evidence—the audio and pictures—were at best ambiguous. The audio consisted of struggling noises, the defendant pleading with Utterback that he was not combative and could not breathe, and Utterback physically threatening defendant while telling him to relax and stop fighting. The pictures from the scene show a bloodied defendant and Utterback with some minor cuts. And though Utterback testified to defendant's unreasonable force, he also admitted to several acts of force against defendant that a reasonable juror could find constituted excessive force.

The totality of the evidence could reasonably support reaching any of the following findings: (1) defendant's resistance fell on the section 148 side of physically struggling; (2) defendant used reasonable force in response to Utterback's excessive force; or (3) defendant used unreasonable force to resist. Only the last option supports a section 69 conviction. Thus, there is a reasonable probability defendant would have been convicted of the lesser offense had the jury been properly instructed. This error was therefore prejudicial, requiring reversal. Because there is substantial evidence for the greater offense, "we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense." (*People v. Kelly* (1992) 1 Cal.4th 495, 528.) And since defendant will be resentenced regardless of the prosecutor's choice, we do not address defendant's additional arguments challenging his sentence.

## DISPOSITION

We reverse the judgment. In the trial court, the People must file an election within 30 days of the issuance of our remittitur either to retry defendant for a violation of Penal Code section 69 or to accept a reduction of this count to a violation of Penal Code section 148, subdivision (a)(1), after which the trial court must resentence defendant.

                      /s/
                     MESIWALA, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
DUARTE, J.

8